United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEMETRIUS L. HARVEY,

        Plaintiff,

  v.

CITY OF OAKLAND, et al.,

        Defendants.

                          /

No. C07-01681 MJJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT**

## INTRODUCTION

    Before the Court is Defendants City of Oakland ("City"), Oakland Police Department, Oakland Police Chief Wayne Tucker, Deputy Police Chief Howard Jordan, Police Lieutenant Gier, Police Lieutenant Whiteman, Officer Dominque Arotzarena ("Officer Arotzarena"), Officer J. Morris, Officer Muschi and Officer Gutierrez's (collectively, "Defendants") Motion to Dismiss and Motion for More Definite Statement.[1]  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion For More Definite Statement.

## FACTUAL BACKGROUND

    The material facts alleged in Plaintiff Demetrius Harvey's ("Plaintiff") complaint are as follows.

---

[1] Docket No. 28.

United States District Court
For the Northern District of California

1    On the evening of December 27, 2005, Plaintiff was a passenger in a vehicle stopped by

2    officers of the Fresno Police Department.  (First Amended Complaint, "FAC" ¶ 2.)  After

3    demanding that Plaintiff show his identification, the officers informed Plaintiff that he was under

4    arrest pursuant to an outstanding warrant in Alameda County.  (*Id.*)  After his arrest, officers moved

5    Plaintiff to the Fresno County Jail and detained him there against his will until, they claimed, they

6    could transfer him back to the custody of the Oakland Police on robbery charges.  (*Id.* ¶ 3.)  While in

7    custody at the Fresno County Jail, Plaintiff experienced degrading and humiliating visual body

8    cavity strip searches.  (*Id.* ¶ 8.)  Plaintiff repeatedly told the Fresno officers that they had arrested the

9    wrong person.  (*Id.* ¶¶ 2-3.)

10    On December 30, 2005, Plaintiff was placed into the custody of Oakland Police Officers

11    Muschi and Gutierrez, who transported Plaintiff back to Oakland and took him to an interview room.

12    (*Id.* ¶ 4.)  Several other officers appeared in the room and accused Plaintiff of crimes involving

13    liquor stores.  They also informed him that they had caught him on videotape.  (*Id.* ¶ 5.)  Plaintiff

14    then exercised his right to silence and refused to answer any of the officers' questions.  (*Id.*)

15    Sometime later, Officer Arotzarena played the video in question, which showed a person other than

16    Plaintiff committing the crimes charged.  (*Id.* ¶ 6.)  Even after realizing Plaintiff was not their

17    suspect, the officers did not release Plaintiff as he demanded, but instead charged, booked, and

18    placed Plaintiff into custody for his refusal to cooperate.  (*Id.* ¶¶ 6-7.)  Throughout this encounter,

19    Plaintiff repeatedly told the Oakland officers that they had arrested the wrong person.  (*Id.* ¶¶ 4-5.)

20    The officers sent Plaintiff to North County Jail, later transferring him to Santa Rita Jail, and

21    detained him against his will.  (*Id.* ¶ 7.)  In both jails, Plaintiff again experienced degrading and

22    humiliating visual body cavity strip searches.  (*Id.* ¶ 8.)  Plaintiff spent more than ten days in custody

23    after his arrest in Fresno before posting bail on January 8, 2006.  (*Id.* ¶ 9.)  On March 23, 2006,

24    Judge Morris Beatus dismissed the remaining charges against Plaintiff.  (*Id.* ¶ 10.)

25    On July 13th, 2007, Plaintiff filed a FAC against Defendants.  In his first cause of action[2],

26    Plaintiff seeks relief under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment

27    

28    _____

[2] Though Plaintiff lists the separate claims for relief in his FAC as "Counts," the Court will refer to them as causes of action for the purposes of this motion.

2

Rights.  In his second, third, and fourth causes of action, Plaintiff makes tort claims for false arrest and imprisonment, negligence, and negligent infliction of emotional distress.  Finally, in his fifth and sixth causes of action, Plaintiff asserts claims under Article 1 §§ 7(A) and 13 of the California Constitution.

**PROCEDURAL BACKGROUND**

On August 6, 2007, Defendant moved to dismiss Plaintiff's FAC, under Federal Rule of Civil Procedure 12(b)(6), and in the alternative, moved for a more definite statement under Rule 12(e).  On August 29, 2007, Plaintiff filed an opposition to Defendant's motion.

**LEGAL STANDARD**

**A.      Motion to Dismiss - Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory.  *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

**B.      Motion For More Definite Statement - Rule 12(e)**

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing

United States District Court

For the Northern District of California

a responsive pleading." A Rule 12(e) motion for a more definite statement "[is] viewed with

disfavor and [is] rarely granted because of the minimal pleading requirements of the Federal Rules."

*Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal.1994). A motion for a more

definite statement attacks unintelligibility in a pleading; therefore, it is proper only where the

complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.

*See Boxall v. Sequoia Union High School District*, 464 F.Supp. 1104, 1114 (N.D.Cal.1979);

*Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). In such cases, the defendant

cannot reasonably be expected to frame a proper response. *Famolare, Inc. v. Edison Bros. Stores,*

*Inc.,* 525 F.Supp. 940, 949 (E.D. Cal. 1981) ("A motion for a more definite statement should not be

granted unless the defendant cannot frame a responsive pleading"); *Cellars v. Pacific Coast*

*Packaging, Inc.*, F.R.D. 575, 578 (N.D. Cal. 1999). Moreover, courts have held that if discovery

will provide the detail sought by a motion for more definite statement, the motion should be denied.

*Beery v. Hitachi Home Electronics, Inc.*, 157 F.R.D. 477, 480 (C.D. Cal 1993). The court has wide

discretion and "it is within the trial court's power to allow or to require the plaintiff to supply, by

amendment to the complaint or by affidavits, further particularized allegations of fact." *Warth v.*

*Seldin*, 422 U.S. 490, 501-02 (1975).

## ANALYSIS

**A.    Motion to Dismiss - Rule 12(b)(6)**

**1.    Arrest Warrant**

Defendants argue that all counts alleged in Plaintiff's FAC should be dismissed because

Plaintiff's detention and jailing were pursuant to a facially valid arrest warrant. Plaintiff, however,

contests the validity of the warrant.

First, Defendants contend that Plaintiff's § 1983 claim must fail as a matter of law. Claims

under § 1983, alleging violations due to detention and jailing, are not cognizable if the actions were

taken subject to a facially valid warrant. *See Baker v. McCollan,* 443 U.S. 137, 144 (1979) (holding

there is no cognizable constitutional claim when one is detained pursuant to a valid warrant). If,

however, the warrant is not facially valid, or there are other deficiencies in the issuance of the

warrant, a § 1983 claim can stand. *See, e.g., Lombardi v. City of El Cajon*, 117 F.3d 1117, 1118 (9th

4

United States District Court

For the Northern District of California

1   Cir. 1997). As is relevant to the present case, a claim may be brought under 42 U.S.C. § 1983 where

2   it is alleged (1) that a search warrant was obtained through "allegations of deliberate falsehood or

3   reckless disregard for the truth"; and (2) when the false allegations are set aside the remaining

4   allegations are insufficient to support a finding of probable cause. *Id.* at 1118. (citing *Franks v.*

5   *Delaware*, 438 U.S. 154 (1978), *See also, Baldwin v. Placer County*, 418 F.3d 966, 970 (9th Cir.

6   2005) (plaintiffs established civil rights were violated by presentation of affidavit which could not be

7   sustained without false statements).

8        Second, Defendants contend that Plaintiff cannot recover on his state law claims because the

9   officers acted pursuant to a facially valid warrant. Defendants' argument is based on California

10   Civil Code § 43.55, which provides immunity to, and precludes actions against, "any peace officer

11   who makes an arrest pursuant to a warrant regular upon its face if the peace officer, in making the

12   arrest acts without malice and in the reasonable belief that the person arrested is the one referred to

13   in the warrant." If a warrant appears valid and adequately describes the detained person, the officer

14   has the lawful authority to arrest that person as a matter of law. *Lopez v. City of Oxnard*, 207 Cal.

15   App. 3d 1, 7-9 (1989).

16        In sum, therefore, Defendants argue that the existence of a facially valid warrant precludes

17   Plaintiff's recovery on all causes of action. In the present case, Plaintiff acknowledges the existence

18   of an outstanding warrant. (FAC ¶ 2.) In addition, however, he disputes the validity of the warrant.

19   (*Id.* ¶ 40-43.) He argues that the warrant was based on wrongful identification and misleading

20   evidence and that Defendants' actions were willful, wanton, malicious, oppressive, and in bad faith.

21   (*Id.* ¶ 41, 54.) Whether Defendants acted pursuant to a valid arrest warrant is, therefore, disputed.

22   The Court cannot resolve the issue at this stage and therefore, **DENIES** the Motion on this ground.

23       **2.**    **Qualified Immunity**

24        Defendants contend that Officers Muschi and Gutierrez have qualified immunity and the

25   claims against them should, therefore, be dismissed. Plaintiff disagrees with this assertion.

26        When a police officer asserts qualified immunity, the district court must apply a two-part

27   analysis. *Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir. 1993). The first question is whether, taken

28   in the light most favorable to the party asserting injury, the facts alleged show that the officer's

United States District Court

For the Northern District of California

1   conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The next step is

2   to determine whether the right was clearly established.  *Id.*  The dispositive inquiry in determining

3   whether a right is clearly established is whether it would be clear to a reasonable officer that his

4   conduct was unlawful in the situation he confronted.  *Id.* at 202.

5        Here, Plaintiff contends that Officers Muschi and Gutierrez transported him from the Fresno

6   County jail to Oakland following his arrest.  (FAC ¶ 4.)  It also appears from Plaintiff's allegations

7   that Officer Muschi and Gutierrez acted pursuant to an outstanding arrest warrant.  (*Id.* ¶ 2.)  None

8   of Plaintiff's allegations regarding misconduct in procuring or acting upon that warrant seem to

9   involve either officer.  (FAC ¶ 4.)  Plaintiff, therefore, alleges no facts indicating that Officers

10  Muschi and Gutierrez violated his constitutional rights.  Officer Muschi and Gutierrez therefore,

11  have qualified immunity for their actions alleged in the complaint.

12       The Court, therefore, **GRANTS** Defendant's Motion to Dismiss as to all claims against

13  Officers Muschi and Gutierrez, but **GRANTS** Plaintiff Leave to Amend.

14       **3.        Individual Defendants**

15       Defendants contend that the complaint should be dismissed as against Chief Wayne Tucker,

16  Deputy Chief Howard Jordan, Lieutenant Gier, Lieutenant Whitman, and Officer J. Morris because

17  Plaintiff makes no factual allegations against them in the complaint. The Court disagrees.

18       To meet the notice pleading requirements, the complaint must contain sufficient factual

19  allegations to make a right to relief more than speculative. *Twombly,* 127 S. Ct. at 1964-65 (2007).

20  A motion to dismiss should only be granted, however, when the complaint does not provide "enough

21  facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87.  It is improper to dismiss,

22  on the pleadings alone, a §1983 complaint alleging governmental liability, even if the claim is based

23  on "nothing more than a bare allegation that the individual officers conduct conformed to official

24  policy, custom, or practice." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir.

25  2002).

26       Here, *pro se* Plaintiff alleges facts against these Defendants that could make out a § 1983

27  claim.  Plaintiff alleges these Defendants were in supervisory and policy making capacities and

28  failed to adequately supervise or discipline individual officers engaging in illegal conduct.  (FAC ¶

6

49.)  He also contends that the Defendants' who strip searched Plaintiff acted pursuant to a policy, practice and custom to arrest and strip-search persons when they have reason to believe that person is not the person they are truly looking for.  (*Id.*¶ 48.)  Plaintiff further alleges that despite knowledge of this illegal policy, pattern, practice and custom, the supervisory and policy making officers took no steps to terminate the policy or discipline, supervise or train the individual officers that engaged in such practice.  (*Id.*¶ 49-50.)  As a direct and proximate cause of these acts the Plaintiff alleges damages.  (*Id.*¶ 51.)  These allegations are sufficient to put Defendants on notice.  The Court, therefore, **DENIES** Defendants' Motion to Dismiss on this issue.

### 4.   Plaintiff's § 1983 Claims

Defendant City contends that Plaintiff has not sufficiently plead a policy or custom to assert a § 1983 claim against it.  Plaintiff asserts that Defendants' actions were the result of an official policy of the City of Oakland.

A person acting under the color of state law can be liable for depriving another of rights and privileges under the Constitution and laws of the United States.  42 U.S.C. § 1983.  While a municipality qualifies as a "person" under § 1983, it may not be liable for the actions of its employees alone.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).  A local government must be *directly* responsible for the injury, such as when "the action that is alleged to be unconstitutional implements or executes a policy statement . . . officially adopted and promulgated by the body's officers."  *Id.* at 690.  Allegations drafted by *pro se* plaintiffs, however, are held to a "less stringent standard" than those prepared by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

Defendant argues that Plaintiff has not properly alleged that employees conducted the unlawful strip searches pursuant to a policy or custom of the City.  (Def.'s Mem. of P. & A. at 5.)  In the FAC, however, Plaintiff alleges that such a policy existed and was the direct cause of his injuries:

> "The actions of the officers who arrested, detained, and strip-searched Plaintiff were taken pursuant to a policy, pattern, practice, and customs of the City of Oakland to . . . strip search persons at county jails, even where there is reason to believe the person in custody is not the person police were looking for."

(FAC ¶ 48.)  A review of Plaintiff's complaint reveals that Plaintiff sufficiently alleges his injuries were the result of a City policy in order to assert a *Monell* claim against Defendant.[3]  Consequently, the Court **DENIES** Defendant's motion to dismiss Plaintiff's § 1983 claim.

### 5.    Plaintiff's California Constitutional Claims

Defendants also assert that Plaintiff cannot state a claim for damages under Article 1 §§ 7 and 13 of the California Constitution because California law does not recognize such actions.  Plaintiff contends that private actions for damages are permitted under the California Constitution.  Although it is unclear from his complaint, Plaintiff may also seek non-monetary relief.  (FAC ¶¶ 13, 48-50, FAC at 13.)

### a. Plaintiff's Claim for Damages

Plaintiff seeks general, specific, punitive, and miscellaneous damages.  (FAC at 13.)

### 1. Article 1, § 7(a)

*Katzberg v. Regents of the University of California* dictates whether a violation of a California constitutional provision may give rise to damages.  29 Cal. 4th 300 (2002).  In *Katzberg*, the California Supreme Court stated that constitutional provisions are "self-executing" to the extent they support declaratory and injunctive relief against proper defendants, yet there remains a question as to whether such provisions allow for recovery of money damages outside of any enacting legislation.  *Id.* at 307.  Applying the rationale of the United States Supreme Court's decision in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the California Supreme Court provided a framework to determine whether a constitutional provision could allow an action in damages. *Id.* at 317.

First, the reviewing court should determine "whether there is evidence from which [to find or infer, within the constitutional provision at issue, an affirmative intent" to permit or preclude damages as a remedy.  *Id.*  Second, "if no affirmative intent either to authorize or withhold a

---

[3] Defendant also argues that because the strip search occurred in county jails, not the City's, Plaintiff cannot "as a matter of law" assert a claim regarding the conduct within those jails without alleging the City maintained some control. (Def.'s Mem. of P. & A. at 5.)  While Plaintiff faces the stiff burden of proving the actions within a  county jail were done in accordance with a City policy, the Court cannot conclude from the facts alleged in the complaint that the City could only be directly liable if it asserted control over the county jail.

8

United States District Court

For the Northern District of California

1  damages remedy is found," the court must "undertake the 'Constitutional tort' analysis adopted by

2  *Bivens* and its progeny." *Id.* Under this analysis, the court looks to see "whether an adequate

3  remedy exists, the extent to which a constitutional tort action would change established tort law, and

4  the nature and significance of the constitutional provision." *Id.* If these factors counsel against

5  recognition of a constitutional tort, the inquiry ends, yet if not, the court must further consider "the

6  existence of any special factors counseling hesitation in recognizing a damages action, including

7  deference to legislative judgment, avoidance of adverse policy consequences, considerations of

8  government fiscal policy, practical issues of proof, and the competence of courts to assess particular

9  types of damages." *Id.*

10      Applying this framework, the *Katzberg* court concluded that the due process and equal

11  protection clause of the California Constitution, Article 1 § 7(a), does not provide an action for

12  monetary relief. *Id.* at 329. Specifically, the court found no indication, either in the language or

13  legislative history, of an implied right to recover damages. *Id.* at 324. In addition, the court noted

14  that the existence of alternative remedies for enforcing one's due process rights such as a writ of

15  mandate, California Code of Civil Procedure § 1085, or the ability to obtain declaratory or injunctive

16  relief under the section militates against recognition of a constitutional tort for damages.[4] *Id.* at

17  326-27.

18      As demonstrated by *Katzberg*, Plaintiff cannot state a claim for relief under § 7(a) of the

19  California Constitution for damages. Because an action for damages under § 7(a) is not a cognizable

20  claim under California law, the Court must dismiss Plaintiff's sixth cause of action insofar as

21  Plaintiff seeks monetary damages.

## 2. Article 1, § 13

23      Whether the *Katzberg* analysis may also bar Plaintiff's unreasonable search and seizure

24  claim for damages under § 13 presents an unresolved question. While the California Supreme Court

25  employed the *Katzberg* factors in refusing to recognize a private right of action in damages for

26  violations of the free speech clause of the state constitution, Article 1 § 2(a), *Degrassi v. Cook*, 29

27

28  _____
        [4] In *Katzberg*, the court explicitly declined to consider what effects the availability of a federal law remedy such as
    § 1983 would have on recognizing an action for damages under the state constitution. 29 Cal.4th at 327 n.29.

United States District Court

For the Northern District of California

1    Cal. 4th 333 (2002), it has not, as of yet, applied them to the search and seizure context.[5]

2         However, two recent cases in this District undertook the *Katzberg* analysis to determine § 13

3    does not create an action for damages under the California constitution. *Wigfall v. City and County*

4    *of San Francisco*, 2007 WL 174434 (N.D. Cal. Jan. 22, 2007); *Manning v. City of Ronhert Park*,

5    2007 WL 1140434 (N.D. Cal. April 17, 2007). In *Wigfall*, the court looked at the plain language of

6    the provision under the first prong of *Katzberg* and found the section only stated a principle of law

7    with no procedures or mechanisms from which to imply the availability of monetary remedy.[6]

8    *Wigfall*, 2007 WL 174434 at *5. Nor did the legislative history reveal any such implication. *Id.*

9    Finding no dispositive evidence on intent, the court continued to the second prong of *Katzberg* and

10   concluded that the plaintiff's additional federal and state law claims provided an adequate remedy

11   independent of § 13. *Id.* at *6. As a result, the court held the *Katzberg* factors "militat[ed] against

12   fashioning a new tort remedy under article I, § 13." *Id.*

13        *Wigfall*'s reasoning is persuasive and applicable here. As in *Wigfall*, this Court cannot infer

14   any intent by the drafters to provide a right to monetary relief under § 13. Plaintiff has monetary

15   remedies available to him under his federal §1983 and state negligence causes of action. These

16   causes of action provide him an adequate remedy for his alleged search and seizure injury

17   independent of his state constitutional claims. Accordingly, the Court finds no reason to recognize a

18   constitutional tort under § 13. Because an action for damages under § 13 is not a cognizable claim

19   under California law, the Court must dismiss Plaintiff's fifth cause of action insofar as Plaintiff

20   seeks monetary damages.

21        **b. Non-monetary Relief**

22        Although unclear in the FAC, Plaintiff may seek non-monetary relief pursuant to Article I §§

23

24        [5] In its motion, Defendant cites recent decisions out of the Eastern District of California in support of the proposition
     that § 13 does not provide a damages remedy. (*See* Def.'s Mem. of P. & A. at 5.) However, since neither opinion explicitly

25   applies the factors set out in *Katzberg*, this Court is reluctant to rely on those cases here. *See Rendon v. City of Fresno*, 06-
     00735, 2005 WL 3144144 at *3 (E.D. Cal. Nov. 23, 2005); *Weimer v. County of Kern*, 05-00661, 2006 WL 3834237 at *8

26   (E.D. Cal. Dec. 28, 2006).

27        [6] Article 1, § 13 states, "The right of the people to be secure in their persons, houses, papers, and effects against
     unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported

28   by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." Cal. Const.
     art. I, § 13.

United States District Court

For the Northern District of California

1   7 and 13 of the California Constitution.  Unlike claims for damages, claims for non-monetary relief

2   may be available under Article 1 § 7 and 13.  *See Manning*, 2007 WL 1140434, at *1, *Wigfall*, 2007

3   WL 174434 at *6.

4          Here, Plaintiff indicates that he hopes that this lawsuit will ensure that the City of Oakland

5   and Oakland Police Department review their arrest and detention policies and put procedural

6   safeguards in place to prevent constitutional and civil rights violations in the future.  (FAC ¶¶ 13,

7   48-50.)  Plaintiff further requests a public apology for violation of his civil rights, and further relief

8   as the Court may deem just and proper.  (FAC at 13.)  Such language indicates that the Plaintiff may

9   be interested in non-monetary relief.  However, he neither explicitly requests injunctive or

10  declaratory relief, nor does he link his request to his causes of action under the California

11  Constitution.  Thus, while a claim for injunctive or declaratory relief is permissible, Plaintiff's FAC

12  is unclear as to whether he seeks such relief.

13         The Court, therefore, **GRANTS** Defendants' Motion to Dismiss Plaintiff's fifth and sixth

14  causes of action pursuant to CA Const. Art. I §§ 7(a) and 13, but **GRANTS** Plaintiff leave to amend

15  regarding non-monetary relief.

16         **6.     Plaintiff's State Law Tort Claims**

17         Defendants urge this Court to dismiss Plaintiff's remaining state law claims–Plaintiff's

18  second, third, and fourth causes of action–as to the City because the claims fail to allege any

19  statutory basis imposing a mandatory duty on the City.  (Def.'s Mem. of P. & A. at 5).

20         Under California law, "direct tort liability of public entities must be based on a specific

21  statute declaring them to be liable, or at least creating some specific duty of care."  *Eastburn v. Reg'l*

22  *Fire Prot. Auth.*, 31 Cal.4th 1175, 1183 (2003); *see also* CAL. GOV'T CODE § 815 (West 2007).

23  However, a public entity can still be held vicariously liable for the actions of its employees.  *Id.  See,*

24  *e.g., Brennemen*, 208 Cal. App. 3d at 818 (noting the state may be liable for the actions of its parole

25  officers), *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1112 (2004) (noting that plaintiff

26  may assert an alternative theory of vicarious liability against a city for the conduct of its police

27  officers).

28         On the face of the complaint, Plaintiff appears to assert two state law tort theories of liability

United States District Court

For the Northern District of California

against the City: (1) for direct liability; and (2) for vicarious liability.  Turning first to the direct

liability theory, Plaintiff specifically alleges that his wrongful arrest and strip search resulted from

either an affirmative policy of the City or a failure to properly train its officers.  (FAC ¶¶ 48-51.)

Plaintiff cites California Government Code § 815.2 as a basis for relief.  While this section holds a

public entity vicariously liable for its employees' torts committed within the scope of employment, it

does not provide for direct liability unless a statute so provides.  CAL. GOV'T CODE § 815.  Plaintiff

does not cite to any statute.  Without such a statute, Plaintiff cannot assert a cognizable legal theory

against the City for direct liability.  *See Van Ort v. Estate of Stanwich*, 92 F.3d 831, 840 (9th Cir.

1996).

Turning next to the vicarious liability theory, Plaintiff alleges that Defendant is responsible

for the conduct of its officers acting within the scope of their employment.  (*See* FAC  ¶¶ 19-29.)

Under Government Code § 815.2, Plaintiff is not required to invoke any enacting statute to assert

liability against the City as long as the officers themselves can be found liable.  Therefore, to the

extent that Plaintiff asserts direct liability against Defendants, the Court **GRANTS WITH LEAVE

TO AMEND** Defendants' motion to dismiss the second, third, and fourth causes of action as against

the City.  To the extent that Plaintiff asserts liability against the City based on the actions of the

individual officers, the Court **DENIES** Defendants' motion.

**B.**      **Motion For More Definite Statement - Rule 12(e)**

Defendants assert they cannot meaningfully respond to Plaintiff's complaint without a more

definite statement.  (Def.'s Mem. of P. & A. at 6.)  Specifically, Defendants points to Plaintiff's

failure to identify which individual Defendants engaged in the actions alleged in the complaint or

provide any information as to which causes of actions are brought against whom.  (*Id.*)  Defendants

conclude that such information is necessary to fashion an appropriate responsive pleading.  (*Id.* at 7.)

This Court disagrees.  Plaintiff asserts sufficient facts and legal theories in his complaint to

inform the City and individual Defendants of the nature of the claims being asserted.  Rule 12(e)

does not entitle Defendants to additional detail about who did what when discovery can settle such

factual issues.  *See Beery*, 157 F.R.D. at 480.  In addition, Plaintiff names individual Defendants

who "personally directed and [took] part in unlawful practices and policies alleged in the

1  complaint." (*See* FAC ¶¶ 16-22.)  Because Defendants offer no compelling need for clarification,

2  the Court **DENIES** Defendants' motion for more definite statement.

3

4  **CONCLUSION**

5    For the foregoing reasons, the Court **DENIES IN PART AND GRANTS IN PART WITH**

6  **LEAVE TO AMEND** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion For More

7  Definite Statement.  Plaintiff shall have 30 days from the filing date of this Order to amend his

8  second, third, fourth, fifth, and six causes of action, and amend with regards to Defendants Muschi

9  and Gutierrez.

10

11  **IT IS SO ORDERED.**

12

13

14  Dated: October 15, 2007

15  MARTIN J. JENKINS
   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**<br>For the Northern District of California

13

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


DEMETRIUS L. HARVEY,                           Case Number: CV07-01681 MJJ

                    Plaintiff,                 **CERTIFICATE OF SERVICE**

    v.

CITY OF OAKLAND et al,

                    Defendant.
_____/


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 13, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Demetrius Harvey
360 So Helm Avenue
Fresno, CA 93727


Dated: November 13, 2007

                                   Richard W. Wieking, Clerk
                                   By: T. De Martini, Deputy Clerk