1   JOHN A. RUSSO, City Attorney - SBN 129729
    RANDOLPH W. HALL, Assistant City Attorney - SBN 080142
2   RACHEL WAGNER, Supervising Trial Attorney - SBN 127246
    CHRISTOPHER Kee, Deputy City Attorney – SBN 157758
3   One Frank H. Ogawa Plaza, 6th Floor
    Oakland, California  94612
4   Telephone:  (510) 238-7686, Fax:  (510) 238-6500
    Email:  ckee@oaklandcityattorney.org
5   25404/520038

6   Attorneys for Defendants
    CITY OF OAKLAND, et al.
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  DEMETRIUS L. HARVEY,                      CASE NO. C07-01681 SBA

13              Plaintiff,                     ORDER RE: DEFENDANTS' MOTION
                                               TO FOR SUMMARY JUDGMENT, OR,
14        v.                                   ALTERNATIVELY, PARTIAL SUMMARY
                                               JUDGMENT
15  CITY OF OAKLAND, a municipal
    Corporation; OAKLAND POLICE               [
16  DEPARTMENT; WAYNE TUCKER, Chief,          Date:     October 21, 2008
    Oakland Police Department; DEPUTY         Time:     1:00 p.m.
17  CHIEF HOWARD JORDAN,                       Dept:     Courtroom 3, 3rd  floor
    OAKLAND POLICE LIEUTENANT GIER,
18  OAKLAND POLICE LIEUTENANT                  The Honorable Sandra Armstrong
    WHITMAN, OAKLAND POLICE OFFICER
19  DOMINIQUE AROTZARENA,
    OAKLAND POLICE OFFICER J. MORRIS,
20  OAKLAND POLICE OFFICER MUSCHI,
    OAKLAND POLICE OFFICER GUTIERREZ,
21  In their official and individual capacities,
    Does 1 through 50, inclusive.
22
                Defendants.
23

24

25

26

Memorandum of Points and Authorities In
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 SBA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.  INTRODUCTION

Before the court is defendants' motion for summary judgment, or, alternatively partial summary judgment.  For the reasons set forth below, defendants' motion is granted.

## II.  STATEMENT OF FACTS

On November 23, 2005, Kaled Saled was working at the San Pablo Liquor market at 2363 San Pablo Avenue in the City of Oakland.  At approximately 10:30 p.m. a group of 10-12 black men dressed in business suits and bow ties came into the store, one of whom identified himself as a Muslim.  Another of the men had a black semi-automatic handgun. At a signal from one of the men, they began to smash out windows of the store's refrigerator, and smash liquor bottles.  Damage was estimated at $19,000 dollars.  The incident was recorded on a surveillance video.  Defendants Supporting Evidence Re: Motion for Summary Judgment, or, Alternatively, Partial Summary Judgment, (DSE) Exhibit 1 at paragraph 2; Exhibit 1(B) at pg. 1.

That same evening, Ehab Taha was working as a cashier at New York Market, located at 3446 Market Street in Oakland, when approximately 10-11 black men in dark business suits and bow ties entered the store.  An older black man appeared to be their leader; younger members were armed with metal pipes, knives, and guns.  Taha, thinking it was a robbery attempted to raise a shotgun; he was punched in the face several times, causing him to bleed.  The older man told Taha he did not want him to sell liquor to the black community, at which point the other members of the group began to vandalize the store.  They left with the shotgun. Here too, damage was estimated at $19,000. There was however no video.  DSE, Exhibit 1(A); Exhibit 1(B) at pg. 2.

On November 24, 2005, Oakland Police Sergeant Dominique Arotzarena was assigned as the lead investigator for these crimes, which were deemed felonies.  As part

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   of his investigation he obtained a copy of the surveillance video of the San Pablo Market

2   incident from ktvu.com, the one obtained from the market itself being inoperable.  DSE,

3   Exh. 1 at paragraph 2, 4.

4        On November 25, 2005, Sgt. Arotzarena met with a confidential informant known as

5   CI-21.  CI-21 had independent knowledge of the men appearing in the video as associates

6   of Your Black Muslim Bakery.   In his meeting with Sgt. Arotzarena, CI-21 appeared

7   credible and knowledgeable about the Black Muslim Bakery organization.  DSE, Exhibit 1,

8   paragraph 5.

9        Upon viewing the ktvu.com video, CI-21 identified several persons on the video by

10  name. (The original surveillance video was still inoperable.)  CI-21 identified Jamal Bey

11  (aka Yasir Hakeem Azzem and Jamail Robinson), Asad Bey,  Dyamen Williams, Donald

12  Cunningham, and Yusuf Bey IV, as being inside the store.  CI-21 described each of these

13  person's connection to the Black Muslim Bakery organization.

14       C-21 specifically described "Asad Bey" as a man behind the counter when the

15  crimes were committed.  He stated that Asad Bey was 21-23 years old, 5'-6" to 5'-7", 140-

16  150 pounds, bald head, and had a certain shape to his face. DSE, Exhibit 1 at paragraph

17  7.

18       Also on November 25, 2005, Sgt. Arotzarena obtained confidential information from

19  other police department sources that the person identified by CI-21 as "Asad Bey" was

20  Demetrius Harvey, who was associated with the Black Muslim Bakery.  He obtained the

21  names and photos of several persons identified in the video and approximately 14 photos

22  of known Black Muslim Bakery associates from the DMV.  DSE, Exhibit 1 at paragraph 8.

23       From those photographs, CI-21  chose plaintiff Demetrius Harvey, identified him as

24  "Asad Bey", and confirmed that he was inside the store behind the counter in the ktvu.com

25  video. CI-21 signed the identifying photograph in Sgt. Arotzarena's presence.  DSE,

26  Exhibit 1 at paragraph 9.   Demetrius Harvey did in fact work at Your Black Muslim Bakery,

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   where he was called Asad Bey.  DSE, Exhibit 2(A) at 18:5-21:2.

2           On November 27, 2005 Sgt. Arotzarena was informed that the mother of Yusuf Bey

3   had called a sergeant at the Oakland Police Department, wanting the police to talk with

4   her son about the case.  CI-21 had identified Yusuf Bey as one of the individuals in the

5   video.[1]  Later that day, three store employees from the San Pablo Liquor store, who had

6   been present when the crimes were committed, viewed a "six pack" photo lineup.  They

7   each independently identified Yusuf Bey.  One of the eyewitnesses further provided Yusuf

8   Bey's full name and said that he was associated with the Black Muslim Bakery.  DSE,

9   Exhibit 1 at paragraph 11.

10           On November 29, 2005, Sgt. Arotzarena submitted sworn affidavits to the Alameda

11   County Superior Court (the Honorable Jacqueline Tabor) in support of warrants for 6

12   persons identified as being inside the San Pablo Liquor Store when the crimes were

13   committed.  The identifications he submitted to the court matched up with information from

14   the Oakland Police Department Intelligence Division regarding the identity of Black Muslim

15   Bakery associates. DSE, Exhibit 1 at paragraph 12; Exhibit 1(B); Exhibit 4 at paragraphs

16   2-3.   Sgt. Arotzarena believed every factual statement in the affidavit to be true at the time

17   that the sworn affidavit was submitted.  DSE, Exhibit 1 at paragraph 13.

18           On November 29, 2005, a warrant was issued for Demetrius Harvey's arrest.  DSE,

19   Exhibit 1 (C).

20           On December 27, 2005, plaintiff was a passenger in a car stopped for speeding on

21   Highway 180 in Fresno, CA; the driver had no license.  At the request of the officer,

22   plaintiff showed his ID, at which point he was placed under arrest on the basis of the

23   warrant from Alameda County.  Plaintiff was transported from Fresno to Oakland by

24   _____

25   1. Yusuf Ali Bey eventually pled guilty to nine felony counts related to these incidents.
     Kahlil Raheem, Donald Cunningham, and Dyamen Williams, each also identified by CI-21,
     pled no contest to a charge of felony vandalism.  DSE, Exhibit 34, paragraphs 5-6.

26

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement                                                                    C07-01681 sba

1   Oakland Police officers.  Second Amended Complaint (SAC) at paragraphs 2-4.

2          On December 30, 2005, Sgt. Arotzarena conducted an interview with plaintiff at the

3   Oakland Police Department.  At the time of his interview, plaintiff appeared to Sgt.

4   Arotzarena to be in his early 20's, 5'7'' tall, approximately 150 pounds, with very short hair.

5   Upon reviewing the video, Sgt. Arotzarena believed that plaintiff resembled the person

6   behind the counter in the ktvu.com video, who CI-21 had identified as Asad Bey, and

7   whom the sergeant had been informed by his colleagues was Demetrius Harvey. DSE,

8   Exhibit 1 at paragraph 16-17; Exhibit 1(D); Exhibit 1(H). Plaintiff alleges that he told

9   various police officers, including Sgt. Arotzarena, that they had the wrong guy, and that it

10  was not him in the video.  SAC at paragraph 4-5 [2]

11         At Sgt. Arotzarena's request, three eyewitnesses from inside the San Pablo Market

12  the night the crimes were committed were brought to the police station. Witness and store

13  employee Kaled Saleh reviewed the surveillance store video to refresh his memory.  The

14  Sergeant  then showed Mr. Saleh a "six-pack" photo line-up of six photographs  of similar

15  appearance, which included a photograph of Demetrius Harvey. Mr. Saleh completed and

16  signed a Photo Lineup Waiver Statement, identifying photograph #1 as the man behind

17  the counter.  Photo #1 was the photograph of Demetrius Harvey.  Mr. Saleh circled,

18  initialed and dated the photograph as well.  DSE, Exhibit 1 at paragraph 20; Exhibit 1(E).

19         Sgt. Arotzarena met separately with the second witness and store employee Saleh

20  Ahmed.  Mr. Ahmed reviewed the surveillance store video to refresh his memory. The

21  Sergeant provided Mr. Ahmed a "six pack" photo line-up, with six photographs of similar

22  appearance, including a photograph of Demetrius Harvey. Mr. Ahmed  identified

23  _____

24  [2] Plaintiff alleges in his Second Amended Complaint that he refused to say anything to
the officers at the interview, and that Sgt. Arotzarena told plaintiff's father that it wasn't
plaintiff in the video.  SAC at paragraphs 31-32. At his deposition he said that Arotzarena

25  told plaintiff that he knew that plaintiff wasn't in the video.  He also testified  that he told
Sgt. Arotzarena, among other things, the names of the individuals in the video, including

26  the individual he says the officers had identified as plaintiff.

Memorandum of Points and Authorities in                          C07-01681 sba
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

Demetrius Harvey as the individual who held him against his will inside the store that night. Mr. Ahmed signed a photo line-up waiver statement identifying photo #5 as the person who held him against his will that night; photograph #5 was Demetrius Harvey.  Mr. Ahmed circled, initialed and dated the photograph of Mr. Harvey. DSE, Exhibit 1 at paragraph 21; Exhibit 1(F).

Following these positive eyewitness identifications, plaintiff was arrested and transported to jail on December 30, 2005.  DSE, Exhibit 1 at paragraph 22.

Plaintiff was arraigned in Alameda County Superior Court on January 3, 2006 on five felony counts: California Penal Code sections 594(A), 422.7, and three counts under section 236. Bail was set at $90,000.  In bringing charges, the District Attorney exercises its own independent discretion, and makes its own assessment as to such charges.  DSE, Exhibit 3; 3(A).

Plaintiff was released on bail on January 8, 2006. Plaintiff alleges that he was strip searched while in the custody of the County.  SAC at paragraph 21 .

On March 6, 2006, at the request of plaintiff and his attorney, plaintiff came to Sgt. Arotzarena's office for another interview, which was recorded.  At that meeting, plaintiff identified the person behind the counter (that is, the person CI-21 and the eyewitnesses had identified as plaintiff) as Cornell Hurst.  At that meeting, plaintiff identified Hurst as being within an inch of plaintiff's height, within 10 pounds of his weight, and with a similar build and hairline.  He admitted at the meeting that he (plaintiff) had been employed at the Black Muslim Bakery until his friend Antar Bey was killed in late October of 2005.  He stated as well that someone who did not know them well could mistake Hurst and plaintiff for one another.  DSE, Exhibit 1 at paragraph 21; Exhibit 1(I).

Charges were dismissed against plaintiff on March 23, 2006.  SAC at  paragraph. 12

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

## III.  DISCUSSION

Plaintiff seeks recovery under both federal and state law claims.

A.  **Federal Claims:**

Plaintiff's First Cause of Action is brought under 42 U.S.C. section 1983.  It seeks recovery for violation of plaintiff's rights under the 4th and 14th Amendments to the U.S. Constitution, and, it appears, also  for an alleged  violation of his 5th Amendment rights.

**1.   14th Amendment**

Plaintiff seeks recovery under the 14th Amendment on the grounds that the defendants "deprived him of liberty and property" without due process of law.  SAC, paragraph 55.  The allegations in the complaint, however, relate exclusively to claims of false arrest and false imprisonment.  As such they are actionable, if at all, under the 4th Amendment, and not the 14th.  See Graham v. Conner, 490 U.S. 386, 395 (1989); Albright v. Oliver, 510 U.S. 266, 273 (1994).[3]  This is so even with respect to his allegations that he was subjected to illegal strip searches by county officials.  Bell v. Wolfish 441 U.S. 520, 558-560; see also Bull v. City and County of San Francisco, ---F.3d --- (9th Cir. 2008); 2008 WL 3876757.   In the absence of any allegations actionable under the 14th Amendment, defendants are entitled to judgment on those claims.

**2.   4th Amendment**

Plaintiff's 4th Amendment claims fall into three separate areas: (1) his initial arrest by Fresno police officers (2) his subsequent incarceration following his interview with Sgt.

---

[3] The Supreme Court has suggested "arguendo" that in some cases, false imprisonment can implicate due process when a suspect is subjected to prolonged detention in the face of repeated protestations of innocence.  See Baker v. McCollan, 443 U.S. 137, 145 (1979). Here, however, it is undisputed that plaintiff here was held for only a short period before he was arraigned—the paradigmatic "process" to which he was entitled under the law.  It is also not entirely clear if Baker's supposition about due process survives Albright v. Oliver, which held that "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Id., 510 U.S. at 274; see e.g. Russo v. City of Bridgeport, 479 F. 3d 196, 208-209 (2nd Cir. 2007) (217 day detention attributable to ignoring and withholding exculpatory evidence actionable under 4th Amendment, not 14th).

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   Arotzarena and (3) strip searches at the County jails.

2           **a.**     **Initial arrest**

3           An officer is not liable for damages based on a claim of false arrest if there was

4   probable cause to make the arrest.  Pierson v. Ray (1967) 386 U.S. 547, 555-557.

5           Probable cause exists "where facts and circumstances within their (the officers')

6   knowledge and of which they had reasonable trustworthy information (are) sufficient in

7   themselves to warrant a man of reasonable caution in the belief that an offense has been

8   or is being committed." Brinegar v. United States 338 U.S. 160, 175-176 (1949) (ellipsis

9   supplied).  The Supreme Court further instructs that "in dealing with probable cause,

10  however, as the name implies, we deal with probabilities.  They are not technical; they are

11  the factual and practical considerations of everyday life on which reasonable and prudent

12  men, not legal technicians act." Id. at 175.  Thus, probable cause "means less than

13  evidence which would justify condemnation; and in all cases of seizure, has a fixed and

14  well known meaning.  It imports a seizure made under circumstances which warrant

15  suspicion." Id. at 176 fn 14 (citing Locke v. United States, 7 Cranch 339 (1813).)

16          The record here shows that the initial arrest was supported by probable cause.

17  The affidavit provided by defendant Arotzarena in support of the application for the warrant

18  disclosed the following:  employees in the vandalized stores identified the individuals in a

19  surveillance video as the ones who vandalized their stores.  The employees stated that

20  they were held against their will by these individuals.  A confidential informant with

21  independent knowledge of the group who vandalized the markets positively identified

22  several of the participants, including plaintiff, who the informant identified as Asad Bey.

23  The informant identified plaintiff both on the basis of a videotape and from his DMV

24  photograph.  The informant also provided information that established the vandalism was

25  based on religious orientation.  See DSE, Exhibit 1(B).  Together, these facts establish the

26

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   elements of California Penal Code sections 236, 422.7 and 594(a).[4]

2      Arotzarena's case notes amplify his reasonable belief that plaintiff was involved in

3   the liquor store attacks.  He explains that, based on his conversation with the confidential

4   informant, CI- 21, he found the informant "very credible and knowledgeable about the Bey

5   Organization."  CI-21's identification of plaintiff as "Asad Bey" was based on his age,

6   height and weight (21-23; 5-6-5-7; 140-150), and other characteristics including a "bald

7   head" a "mark on his face" and the "shape of his face."  In the course of CI-21's review of

8   the videotape he corrected his initial identification, clarifying that plaintiff was not in a white

9   suit, but was the individual "behind the counter."  See DSE, Exhibit 1(H) at pg. 2.

10      Moreover, as Sgt. Arotzarena explains, the identifications were corroborated by the

11   Department's intelligence unit. DSE, Exhibit (1) at paragraph 8.

12      While plaintiff asserts that he was not present at the liquor store attacks, he does

13   not, and indeed cannot, dispute that this was the information that Sergeant Arotzarena

14   based his belief on, and which the magistrate deemed sufficient to support the warrant for

15   plaintiff's arrest.

16      These facts were sufficient to establish probable cause under the "totality of the

17   circumstances" test enunciated in Illinois v. Gates.  U.S. v. Rowland, 464 F.3d 899, 907

18   (9th Cir. 2006).  That test "takes into consideration the informant's veracity, or reliability

19   and his basis of knowledge." Id.  Probable cause is dependent on "the content of

20   information possessed by police and its degree of reliability." Id.  Thus, if the information

21   "has a relatively low degree of reliability, more information will be required to establish the

22   requisite quantum of suspicion than would be required if the tip were more reliable."  Id.

23      The 9th Circuit looks at several factors in order to assess reliability.  These include

24   _____

25   [4] Penal Code section 236 governs false imprisonment; section 422.7 contains criteria for aggravating factors, specifically for a crime committed for the purpose of intimidating someone based on race, color, religion, etc., and if the crime includes "present ability" to

26   commit violence, or actual violence; section 594(a) governs vandalism.

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   whether the informant is known (as contrasted to anonymous), whether there is a track

2   record of reliability, if the informant reveals the basis for his (or her) knowledge; and if

3   there is predictive detail about future events that can be corroborated by police.  Rowland,

4   464 F.3d at 907-908 (internal citations omitted).  It should be noted, however, that the

5   Supreme Court has expressly abjured any rigid test, requiring instead an evaluation of the

6   "totality of the circumstances." Illinois v. Gates, 462 U.S. at 238.

7         Here, the informant was known to Sgt. Arotzarena; indeed Sgt. Arotzarena met the

8   informant face to face.  It was at that face to face meeting that Sgt Arotzarena concluded

9   the informant was "very credible and knowledgeable about the Bey organization."  DSE,

10  Exhibit 1 at paragraph 5; 1(H) at pg. 2.  The 9th Circuit has specifically recognized that "an

11  agent's face to face encounter with an informant may bolster an informant's reliability

12  because officers may perceive and evaluate personally an informants mannerisms,

13  expressions and tone of voice and because the informant knows that he may be tracked

14  down and held accountable for false assertions."   Rowland, 464 F.3d at 908.  In addition,

15  the informant identified the plaintiff both from the video, and from a DMV photograph.  CI-

16  21 identified plaintiff on the basis of his height, weight, age, and baldness.  DSE, Exhibit 1

17  at paragraph 7-9.  The DMV photo shows plaintiff to have extremely short hair on 2/22/05,

18  and also confirms that plaintiff would have been almost 21 on the date of the liquor store

19  attacks. Id., Exhibit 1(A).  His booking photograph establishes further that plaintiff, a month

20  after the incident, had relatively short hair. Id., Exhibit 1(G).  The record also establishes

21  that the informant identified Yusef Bey IV from the video; shortly after the informant's

22  positive ID (and before plaintiff's arrest), Yusef Bey IV's mother called to say her son

23  wanted to talk to the police about the vandalism, thus corroborating at least one of the CI's

24  positive identifications.   DSE, Exhibit 1 at paragraphs 10-11; 1(H) at pg 3. Rowland, at

25  908 (citing Gates at 243-245 and n. 13).   And finally, CI-21 offered this information even

26  in the face of fear of retaliation by the suspects he identified.  Id., Exhibit 1(I) at pg.2.

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1    Evaluating the information known to Sgt. Arotzarena and included in the affidavit to

2   the magistrate, the totality of the circumstances establishes sufficient probability that would

3   give someone of reasonable caution a basis to believe that a crime had been committed,

4   and that it had been committed by plaintiff.  Defendants are accordingly entitled to

5   judgment with respect to any claims based on plaintiff's initial arrest. Rowland, 464 F.3d at

6   908; see also U.S. v. Dobbs, 2007 WL 2318971 (N.D. Cal. 2007) (discussing standards for

7   reliability based on informant).

8         **b.      Subsequent Incarceration**

9    Plaintiff also seeks to recover on the grounds that there was not probable cause to

10  detain him on charges after he had been arrested on the basis of the facially valid warrant.

11  The basis for these claims, as set forth in his complaint, is that he should not have been

12  held, because no one looking at the video could have concluded that the person there was

13  the plaintiff.

14   Plaintiff however, cannot escape the fact that, independent of the video, two

15  witnesses identified plaintiff on the basis of a photo lineup as one of the attackers in the

16  liquor store.  More specifically, one of the employees who was attacked identified plaintiff

17  as the participant who "when (sic) behind the counter & was wearing a black suit & white

18  shirt." DSE, Exhibit 1(E); 1(H) at 9.  That independent identification corroborates the CI's

19  identification of plaintiff in the video as "the MB behind the counter."  Id., Exhibit 1(H) at pg.

20  2. Thus, contrary to plaintiff's allegations, someone could, and did identify plaintiff as a

21  perpetrator of these hate crimes.

22   Plaintiff's deposition testimony, which is considerably at variance with the

23  allegations of his complaint, do not require a different result.  The independent

24  identification was sufficient to establish probable cause, regardless of plaintiff's

25  protestations of innocence, or what Arotzarena may or may not have said to plaintiff. See

26  Skousen v. Brighton High School, 305 F.3d 520, 528 (6th Cir. 2002) ("Eyewitnesses have

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1    firsthand knowledge and are presumed to be reliable and truthful"); <u>Russo v. City of</u>

2    <u>Bridgeport</u>, 479 F.3d at 203-204 (arrest based on identification by victim of robbery

3    sufficient to establish probable cause negating false arrest and false imprisonment

4    charge).[5]   The eyewitness identification is in itself sufficient to establish probable cause,

5    and defendants are entitled to judgment as to claims related to plaintiff's incarceration

6    following his arrest as well.

7               **c.      Strip Searches**

8               There is nothing in the record of this case demonstrating that defendants had any

9    role or knowledge about unlawful strip searches at the County jails where plaintiff was

10   held, and they are entitled to judgment on those claims.

11          **3.      5th Amendment**

12              In his SAC, plaintiff claims that Sgt. Arotzarena told plaintiff's father that he knew

13   plaintiff wasn't in the video, but that he was going to send him to jail anyway because he

14   refused to talk.  These are apparently the allegations in support of what may be a 5th

15   Amendment claim.

16              There is no evidence demonstrating plaintiff was coerced or compelled to testify

17   against himself, and he has thus failed to support any claim under the 5th Amendment .

18   <u>Cooper v. Dupnik</u>, 963 F.2d 1220, 1238 (9th Cir. 1992).

19

20          **4.      Individual   Defendants**

21              In addition to Sgt. Arotzarena (who, as discussed at length above, cannot be liable

22   because he committed no violation of plaintiff's constitutional rights), plaintiff has named

---

23       [5]   As explained above, <u>Russo</u> also considered liability based on "prolonged detention"
     in the face of repeated claims of innocence.  The court found the officers liable under the
24   "prolonged detention" theory because they withheld exculpatory information:  Russo was
     heavily tattooed, while the perpetrator, who appeared in a video was not.  The officers kept
25   the video, which was the <u>only evidence</u> showing the perpetrator did not have tattoos,  from
     the defense, and, it would appear, from state investigators.  Once it was disclosed, after
     217 days in jail, Russo was freed.  <u>Id</u>., 479 F.3d at 209-211. Those facts are markedly
26   different from the facts of this case.

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   Oakland Police Chief Wayne Tucker, Deputy Chief Howard Jordan, Lieutenant Gier,

2   Lieutenant Whitman and Officer J. Morris as defendants.   Each of these defendants is

3   identified as having "personally directed and taken part in unlawful polices (sic) in this

4   complaint."

5          Plaintiff has not adduced any evidence to  support claims against Lieutenants

6   Whitman and Gier, or against Officer Morris, and they are entitled to judgment.  Plaintiff in

7   fact conceded at his deposition that these defendants were named largely because they

8   were in the chain of command, without any evidence that they participated in the events in

9   a way that might conceivably form a basis for individual liability.  DSE, Exhibit 2(A) at 52:1-

10  59:20; see Larez v. City of Los Angeles, 946 F.3d 630, 646 (9th Cir. 1991) (discussing

11  standards and evidentiary showing required for individual liability of police chief); see also

12  Harris v. Roderick, 126 F.3d 1189, 1204 99th Cir. 1997) ("a supervisor is only liable for

13  constitutional violations of his subordinates if the supervisor participated in or directed the

14  violations or knew of the violations and failed to act to prevent them.") In the absence of

15  evidence of participation by these individuals in the conduct alleged, they are entitled to

16  judgment.

17          **5.      Qualified Immunity**

18          "[O]fficers are entitled to qualified immunity even if they acted unconstitutionally, as

19  long as a reasonable officer could have believed the conduct lawful." Alexander v. County

20  of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995). The first inquiry in the qualified

21  immunity defense is whether the facts alleged indicate that the officer's conduct violated a

22  constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If no right would have been

23  violated on the facts alleged, there is no need for further inquiry into immunity. Id. If a

24  constitutional violation can be established, courts next inquire "whether the right was

25  clearly established in the specific context of the case, rather than as a broad general

26  proposition." Id. The dispositive inquiry in determining whether a right is clearly established

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   is "whether it would be clear to a reasonable officer that his conduct was unlawful in the

2   situation he confronted." Id.

3         **a.**    **Plaintiff Cannot Show A Violation of a Constitutional Right**

4         As developed above, plaintiff cannot show a violation of his constitutional rights.

5   Under Saucier, the inquiry need go no further, and Sgt. Arotzarena is entitled to judgment

6   accordingly.  Id. at 201.

7

8         **b.**    **Sgt. Arotzarena Could Have Reasonable Believed Their Conduct Was Lawful**

9         Even were plaintiff had  shown a violation of his rights by Arotzarena, the evidence

10  shows beyond reasonable dispute that Sergeant Arotzarena could have reasonably

11  believed that there was probable cause to arrest and then detain plaintiff as a suspect in

12  the attacks on the liquor stores.  His reliance on the identification by the confidential

13  informant, who's reliability was established on the basis of both a face to face meeting and

14  by the department's own intelligence unit, who's information was corroborated by Yusef

15  Bey's coming forward, and then later by the personal identification by the employees

16  victimized by the violence, was entirely reasonable and justified under established law.

17  Illinois v. Gates, 462 U.S. at 236-238; Rowland, 464 F.3d at 208.  Similarly, his

18  subsequent action in detaining plaintiff as a suspect pending charges by the District

19  Attorney was justified by the independent identification of plaintiff in the photo line-up by

20  the two employees as the individual "behind the counter" who detained them against their

21  will—an identification directly corroborated the earlier identification of plaintiff by the CI.

22  Here again, the practice of utilizing photographic "line-ups" is well established as a

23  permissible police practice, and one that is sufficient to establish probable cause.  See e.g.

24  McNeary v. Stone, 482 F.2d 804, 806 (9th Cir. 1973) (citing Simmons v. United States, 390

25  U.S. 377, 384 (1968).)  Indeed, eyewitness identification of the sort that occurred here is

26  afforded a presumption of reliability.   Skousen v. Brighton High School, 305 F.3d at  528

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

1   ("Eyewitnesses have firsthand knowledge and are presumed to be reliable and truthful.")

2   **6.    City Liability**

3   Plaintiff also seeks recovery against the City of Oakland on the basis of what is

4   evidently a claim for municipal liability under  Monell v. New York Department of Social

5   Services, 436 U.S. 658, 694 (1978). .  He himself says he had no knowledge of any

6   practice by the City of Oakland of arresting individuals that they know were the wrong

7   suspect.  DSE, Exhibit A (1) at 60:13-25.  The record shows that the City has in place

8   constitutionally valid policies related to probable cause, warrants, and arrests.  DSE,

9   Exhibit 5 and attached exhibits.  Plaintiff cannot show that he suffered a deprivation of his

10  rights attributable to an official policy of the City of Oakland.

11  **B.    State Law Claims**

12  The Second Amended Complaint  seeks recovery under California law for false

13  arrest and imprisonment, negligence, negligent infliction and emotional distress, and the

14  California Constitution Article I, sections 13 and 7(A).  As developed below, defendants

15  are entitled to judgment on these claims as well.

16  **1.    Claims Against The City**

17  This court previously dismissed plaintiff's state law tort claims against the City with

18  leave amend to allege a statutory basis for recovery.  Plaintiff's Second Amended

19  Complaint fails to remedy that fundamental defect, and the City is entitled to judgment with

20  respect to any claim for damages.

21  As to the claims under the California Constitution, the court previously dismissed

22  the causes of action against the City based on claims for monetary relief under section

23  7(A) and 13, but granted plaintiff leave to amend to tie his claims for non-monetary relief to

24  his constitutional claims.  The Second Amended Complaint fails to do this, and the City is

25  entitled to judgment accordingly.

26  **2.    Individual Defendants.**

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba

All of plaintiff's state law claims against the individual defendants arise from his allegations of false arrest and false imprisonment.  As explained above, the individual defendants are not liable because there was reason to believe there was probable cause to both arrest plaintiff initially and to turn over the matter to the district attorney. O'Toole v. Superior Court, 140 Cal. App. 4th 488, 511-512 (2006).   Additionally, the City defendants are immune from liability for damages for any imprisonment that occurred following arraignment.  Asgari v. City of Los Angeles, 15 Cal. 4th 744, 758-759 (1995); Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1049-1050 (2007).  Moreover, under California law, officers are not liable for false arrest or false imprisonment if their actions were taken pursuant to a lawful warrant, or there was reasonable cause to believe the arrest was lawful.  O'Toole, 140 Cal. App. 4th 510-511; Galvin v. Hay, 374 F.3d 739, 758 (9th Cir. 2004).  Here, Sgt. Arotzarena had reasonable cause to believe that both plaintiff's initial arrest and the subsequent incarceration prior to his arraignment were lawful. Consequently, regardless of the substantive state law claim, Sgt. Arotzarena and all the other individual defendants are immune from liability for such claims.

In conclusion, the record shows that there are no disputed issues of material fact as to any of plaintiff's claims, and defendants are entitled to judgment accordingly.

**IT IS SO ORDERED.**

Dated:  10/27/08


_____
UNITED STATES DISTRICT JUDGE

Memorandum of Points and Authorities in
Support of Motion to Dismiss First Amended
Complaint and Motion for More Definite
Statement

C07-01681 sba